In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 14-2210

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

SCOTT HAWKINS,

*Defendant-Appellant*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 00081 — **Amy J. St. Eve**, *Judge*.

———————————

ARGUED OCTOBER 1, 2015 — DECIDED OCTOBER 20, 2015

———————————

Before POSNER, MANION, and HAMILTON, *Circuit Judges*.

MANION, *Circuit Judge*. Scott Hawkins and Lester Warfield were indicted for a Chicago bank robbery carried out by two men in February 2012. After his arrest, Warfield initially admitted that he and Hawkins were the robbers, but later changed his story and claimed that he had robbed the bank with a man named James Brooks. Before trial, Hawkins moved to admit Warfield's later statement implicating

Brooks as a statement against interest under Federal Rule of Evidence 804(b)(3). The district court excluded the statement because it lacked sufficient indicia of trustworthiness, and Hawkins was ultimately convicted following trial. For the reasons that follow, we affirm Hawkins's conviction.

## I. BACKGROUND

On February 3, 2012, two men robbed a Chase Bank located on West Irving Park Road in Chicago's North Side. When Lester Warfield was arrested on the day of the robbery, he told the FBI that he had robbed the bank with Scott Hawkins. The following month, Hawkins and Warfield were indicted for the robbery in the Northern District of Illinois. Subsequently, on November 30, 2012, Warfield held a proffer session with the government. During that session, he recanted his initial statement to the FBI and, instead of Hawkins, now alleged that he had robbed the bank with James Brooks, also known as "Stank." (Earlier that year, Warfield also told a confidential informant in prison that a masked bank robber depicted on television was a "co-defendant" of Warfield's who went by the nickname "Stank.") Warfield eventually pleaded guilty to the bank robbery in October 2013; notwithstanding his prior statements, however, Warfield refused to identify the other robber during his plea colloquy.

Prior to trial, Hawkins moved to admit Warfield's November 30 proffer statement regarding Brooks's supposed involvement in the robbery. Because Warfield intended to assert his Fifth Amendment privilege not to testify, Hawkins argued that the proffer statement was admissible under Federal Rule of Evidence 804(b)(3) as a statement against penal interest made by an unavailable

witness. The district court denied Hawkins's motion and excluded Warfield's proffer statement on grounds that the statement was not supported by corroborating circumstances that clearly indicated its trustworthiness. *See* Fed. R. Evid. 804(b)(3)(b). Hawkins was convicted of bank robbery and subsequently sentenced to 100 months' imprisonment. He now appeals his conviction, arguing that the district court erred by excluding Warfield's proffer statement from evidence.

## II. ANALYSIS

Generally, an out-of-court statement offered for the truth of the matter asserted is not admissible unless it falls within an exception to the hearsay rule. Under the exception of Rule 804(b)(3), a hearsay statement may be admissible in a criminal case if three conditions are met: "(1) the declarant is unavailable as a witness, (2) the statement was against the declarant's penal interest when made, and (3) corroborating circumstances clearly suggest that the statement is trustworthy." *United States v. Jackson*, 540 F.3d 578, 588 (7th Cir. 2008) (citations and internal marks omitted). "The proponent of the hearsay statement bears the burden of demonstrating that each of these elements is satisfied." *Id.* (citing *United States v. Robbins*, 197 F.3d 829, 838 (7th Cir. 1999)).

Here, the parties do not dispute that Warfield was unavailable as a witness because he intended to assert his Fifth Amendment privilege not to testify. Nor does the government contest the district court's finding that the proffer statement was against Warfield's penal interest, since it exposed him to a potentially greater sentence and additional criminal charges. *See* Dist. Ct. Order at 3 (noting

that Warfield's proffer statement could result in perjury charges or an enhancement for obstruction of justice). Thus, the only issue on appeal is whether Warfield's proffer statement was supported by corroborating circumstances that clearly indicated its trustworthiness.

The district court's determination regarding the trustworthiness of out-of-court statements is entitled to considerable deference and should be upheld unless clearly erroneous. *Jackson*, 540 F.3d 578, 588–89 (7th Cir. 2008) (citing *United States v. Amerson*, 185 F.3d 676, 684 (7th Cir. 1999); *United States v. Hall*, 165 F.3d 1095, 1112 (7th Cir. 1999)). In *United States v. Nagib*, 56 F.3d 798 (7th Cir. 1995), we identified several factors for consideration in determining whether corroborating circumstances exist for purposes of Rule 804(b)(3): (1) the closeness of the relationship between the confessing party and the exculpated party; (2) whether the statement was voluntarily made after *Miranda* warnings; and (3) whether the statement was made to curry favor with authorities. *Id.* at 805 (citing *United States v. Garcia*, 986 F.2d 1135, 1140 (7th Cir. 1993)). These factors are not exhaustive. Courts must ultimately determine the admissibility of statements against penal interest in light of all the surrounding circumstances. *See Jackson*, 580 F.3d at 589 (citations omitted) ("We have never said … that the considerations we identified in *Nagib* were the *only* factors to be weighed in determining whether corroborating circumstances exist.").

We find no clear error in the district court's determination that Warfield's proffer statement implicating Brooks lacked sufficient corroborating circumstances to be admissible. First, the proffer statement was flatly

contradicted by Warfield's earlier statement to police that Hawkins, not Brooks, was the second robber. Multiple witnesses also implicated Hawkins and Warfield in the robbery, but no witness made any mention of Brooks.[1] Hawkins was likewise found to be the "major contributor" of DNA taken from a hat that was likely worn by one of the robbers during the robbery. (The hat matched the appearance of the robber's hat on the bank's surveillance video and was found outside a car that matched the description of the getaway car.) Further, when Hawkins was caught while fleeing from police shortly after the robbery, he was found to have $2,001 on his person; and one of the bank tellers had given exactly $2,000 to one of the robbers. Finally, notwithstanding his prior mention of Brooks in the proffer statement, Warfield refused to name the individual who had robbed the bank with him when he ultimately made his guilty plea.

Taken together, these circumstances are more than enough to justify the district court's finding that Warfield's proffer statement implicating Brooks was not sufficiently corroborated to warrant admission under Rule 804(b)(3). Indeed, not only do the relevant circumstances cast doubt on the credibility of Warfield's proffer statement, they also

---

[1] For example, one eyewitness who was standing outside the bank during the robbery identified Hawkins and Warfield as the men he saw enter the bank and then come running out just minutes later. Tr. at 111–21. Warfield's nephew also implicated Hawkins and Warfield in the robbery. Tr. at 66–81. Neither witness made any indication that one of the robbers may have been Brooks, or for that matter that the robbers were anyone other than Hawkins and Warfield.

consistently corroborate the trustworthiness of Warfield's initial statement to police on the day of the robbery: that it was Hawkins, not Brooks, who robbed the bank with him.

A few circumstances also appear to corroborate the proffer statement—specifically, the three *Nagib* factors and Warfield's vague comment about "Stank" to the confidential informant—but these circumstances pale in comparison to the host of significant contravening circumstances that undermine the statement's credibility. Accordingly, when viewed as a whole, the circumstances do not "clearly suggest" that Warfield's proffer statement was trustworthy. *See Jackson*, 540 F.3d at 589 (despite several corroborating circumstances, statement against interest was properly excluded where other circumstances—including a prior contradictory statement by the declarant—"strongly detract[ed] from any corroboration").

Hawkins argues at length that the district court erred by considering "anticipated trial evidence" to evaluate the proffer statement's credibility, rather than limiting its consideration to the "context" in which the statement was made. But courts are not permitted, let alone required, to deliberately ignore circumstances relevant to the corroboration inquiry based merely on the ways in which those circumstances may be characterized. The law calls only for the consideration of "corroborating circumstances" clearly indicating trustworthiness. It makes no difference whether those circumstances are instead called "context," or whether they are drawn from evidence that happens to be anticipated at trial. Nothing in Rule 804(b)(3) confines the judge's consideration of relevant circumstances in this way.

Along the same lines, Hawkins contends that the district judge "usurp[ed] the jury's role as the ultimate fact-finder" by assessing the available evidence to determine if the proffer statement was trustworthy. As we previously emphasized in *Jackson*, however, it is the province of the judge to determine the admissibility of evidence; and it is therefore the judge's role, not the jury's, to determine whether sufficient corroborating circumstances exist under Rule 804(b)(3). *Jackson*, 540 F.3d at 590. *See also* Fed. R. Evid. 104(a) (preliminary questions of admissibility are left to the court); Fed. R. Evid. 804(b)(3) advisory committee's note to 1972 amendment (citation omitted) (Rule 804(b)(3)'s corroboration requirement is a "requirement preliminary to admissibility").

Because we conclude that the district judge did not clearly err by excluding Warfield's proffer statement, we do not reach the government's alternative argument that any error was harmless. The district court properly found that the proffer statement was not supported by sufficient corroborating circumstances, and we affirm on that basis alone.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM Hawkins's conviction.